IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GLEN EAGLES OF CANADIAN COUNTY, L.L.C., an Oklahoma limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. CIV-05-0469-HE |
| BOARD OF COUNTY COMMISSIONERS OF CANADIAN COUNTY, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**<u>ORDER</u>**

This case is before the court on the motions for summary judgment filed by defendants the Board of County Commissioners of Canadian County, Phil Carson, individually and in his official capacity as County Commissioner of Canadian County, Lynne Stevenson, individually and in her official capacity as Canadian County Flood Plain Administrator, and Ron Bohannan. [Doc. Nos. 34, 35, 37 and 39]. Plaintiff has responded in opposition to the motions and defendants have filed their replies. Upon consideration, the court concludes plaintiff's federal claims should be dismissed without prejudice for lack of subject matter jurisdiction and supplemental jurisdiction over plaintiff's state law claims should be declined.

<u>Facts</u>

The following relevant facts are construed in a light most favorable to plaintiff. On January 10, 2000, the Canadian County Flood Board was formed and regulations pertaining to flood damage prevention were adopted. Included in these regulations was the adoption

of an official map of the community, referred to as a Flood Insurance Rate Map or "FIRM," on which the Federal Emergency Management Agency ("FEMA") had delineated both the areas of special flood hazards and the risk of premium flood zones.[1] Sometime in the late summer of 2003, plaintiff, a limited liability company owned by Brent Cook and Ronald Waters, bought a tract of land in Canadian County with the intent to parcel it into 77 mobile home lots.[2] After filing its proposed plat with the county, Mr. Cook was notified by defendant Stevenson that portions of three of its proposed lots fell within Zone A and that it needed a permit to build in those areas. The remainder of plaintiff's property fell within Zone X. After notification, Mr. Cook filled out an application for a permit and the matter was set for a hearing before the flood board on September 26, 2003. On that date, Mr. Cook appeared for the meeting of the flood board. However, no action was taken on the permit application because a quorum was not present. Several members of the community were present at the meeting and were allowed to voice their opinions regarding the tendency of plaintiff's property to flood. Mr. Cook alleges that, at this same meeting, defendant Carson told him the only thing his land was good for was raising alfalfa. Cook Dep., p. 25.

---

[1] *The zones which pertain to this matter are described by the parties as "Zone A" and "Zone X." Zone A is an area of land with no defined base flood elevations but which is considered to have a one percent chance or greater of flooding in any given year (referred to as the "100 year flood" or the "100 year storm"). Def's Ex. 6; Dep. of Rick Frithiof, pp. 13, 16-17. Areas in Zone A are regulated by the flood board and a permit is required for new construction in such an area. Def's Ex. 6. Zone X is an area of land which is either in the 500 year flood plain or is not considered at risk for flooding. Frithiof Dep. at p. 34.*

[2] *According to the parties, plaintiff's land is located in "Township 12 North, Range 6 West, Section 16." Def's Ex. 1. The parties refer to this area as simply "Section 16."*

On October 1, 2003, plaintiff filed an amended plat with the county, taking all of the proposed platted area out of the flood plain. On November 13, 2003, the flood board held a meeting and voted to delay consideration of plaintiff's application for a permit until the board received the initial report of an engineer it had hired to determine whether the plaintiff's property should be placed in Flood Zone A. On November 18, 2003, plaintiff withdrew its application for a building permit from the flood board. On November 25, 2003, the flood board held a meeting wherein it noted that the plaintiff had withdrawn its application for a permit. Mr. Waters was present at this meeting but did not sign in and did not speak. During the meeting, the board considered the initial report from its engineer who had determined that plaintiff's land was subject to flooding in the 100 year storm and that the FIRM map designating the area as Zone X was inaccurate. Based on this report, the board discussed delaying development in the area until the FIRM map could be corrected by adopting plaintiff's property into the flood plain.

On November 26, 2003, public notice was given about a special meeting of the flood board scheduled for December 30, 2003. The posted agenda generally stated that the board would be considering amendments to the flood plain regulations. Def's Ex. 26. However, notice posted in two newspapers stated the board would be considering whether to include "Section 16, Township 12 North, Range 6 West, I.M." in the regulatory floodplain. Def's Exs. 27-28.

On December 16, 2003, an emergency meeting of the flood board was held. During the meeting, Canadian County assistant district attorney Paul Hesse advised the board about

their options in regulating areas outside the designated flood plain. Due to the ongoing development of plaintiff's property, the board voted to amend its regulations to allow the board the authority to regulate all property within Zone X. On December 22, 2003, the Board of County Commissioners held a meeting and voted to approve the flood board's amendment to its regulations.

On December 30, 2003, a meeting of the flood board was held. Mr. Hesse advised the board during the meeting that regulating all Zone X areas, which would potentially include the entire county, was not warranted. The board then voted to include Section 16 and part of another section of the county into Zone A on the FIRM. On January 12, 2004, the Board of County Commissioners met and approved the flood board's inclusion of these sections into Zone A of the flood plain.

On October 4, 2004, plaintiff, through Mr. Cook, submitted an application for a permit to develop its land within the flood plain. On October 7, 2004, defendant Stevenson faxed the application back to Mr. Cook with written corrections and an instruction to submit the permit fee. Thereafter, no further action was taken by plaintiff to obtain a permit.

On April, 26, 2005, plaintiff filed this case, alleging that the Board of County Commissioners and defendants Carson and Stevenson violated its right to just compensation under the Fifth Amendment and its right to procedural and substantive due process under the Fourteenth Amendment. In particular, plaintiff asserts that the county defendants, by placing its land in the flood plain, have taken its property, or at least deprived it of the use for which the land was purchased, without just compensation and that it has a protected property

interest in developing its land unencumbered by arbitrary regulations enacted without notice or a hearing. Plaintiff also asserts a state law claim against the Board, Carson and Stevenson for inverse condemnation and state law claims of intentional interference with contractual relations and civil conspiracy against Carson and Stevenson and neighboring property owner Ron Bohannan.

Defendants Board, Carson and Stevenson move for summary judgment claiming that plaintiff does not have a protected property interest in developing its land and that its claims are not ripe for review under Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). Defendants Carson and Stevenson also assert qualified immunity on the constitutional claims raised against them in their individual capacities and immunity from the state law tort claims under the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. §§ 151-200, for acts done within the scope of their employment. Defendant Bohannan moves for summary judgment on the state claims asserted against him by plaintiff.

Ripeness

A ripeness challenge "bears on this court's subject matter jurisdiction under Article III of the Constitution." Bateman v. City of West Bountiful, 89 F.3d 704, 706 (10th Cir. 1996). Accordingly, it "is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." Id.

Plaintiff has the burden of producing evidence to establish that its claims are ripe for review. Signature Props. Int'l Ltd. P'ship v. City of Edmond, 310 F.3d 1258, 1265 (10th Cir.

5

2002). In Williamson, cited supra, the Supreme Court held that a Fifth Amendment takings claims is not ripe until (1) "the governmental entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" and (2) the plaintiff has pursued all available remedies under state law. Williamson, 473 U.S. at 186-97. The same ripeness test applies equally to due process claims which are subsumed within the more particularized protection of the Takings Clause. Signature Props., 310 F.3d at 1266; Bateman, 89 F.3d at 709; Landmark Land Co. v. Buchanan, 874 F.2d 717, 722 (10th Cir.1989) *abrogated on other grounds by* Federal Lands Legal Consortium v. United States, 195 F.3d 1190, 1194 (10th Cir. 1999).

In this case, plaintiff alleges a regulatory takings claim and related due process claims. These allegations are not ripe for review because plaintiff has not sought a final decision of the county regarding the actual application of the zoning regulations to its property or pursued the available state remedy of inverse condemnation to recover compensation for the alleged taking.[3]

Plaintiff argues that it would be futile to pursue administrative remedies from the county because the decision to place its property in the flood plain has already been made. Even assuming the county's decision to adopt the whole of plaintiff's property into the flood plain was final,[4] plaintiff has still not properly followed the procedures for obtaining a permit

---

[3]*See* V.J. Drabek v. City of Norman, 946 P.2d 658, 659 (Okla. 1996) *(recognizing an inverse condemnation proceeding under both the Oklahoma constitution and state statutory law).*

[4]*Plaintiff claims that the final report of the flood board's engineer places a "significant"*
(continued...)

to build under the current zoning requirements.  As a result, there has been no decision by the flood board regarding the extent to which plaintiff may develop its property.  See, e.g., Williamson, 473 U.S. at 191 (noting that "the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations . . . cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question").

Plaintiff further argues that exhaustion of available state remedies should not be required because Oklahoma's inverse condemnation procedures are inadequate to fully compensate it for its lost profits.  See, e.g., Williamson, 473 U.S. at 197 ("Respondent has not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature.").  In Oklahoma, just compensation is defined as "the value of the property taken."  V.J. Drabek, 946 P.2d at 659. Plaintiff does not assert that it is barred from seeking lost profits as a portion of the valuation of its property in a state inverse condemnation proceeding.  However, even if such damages were circumscribed, this does not render Oklahoma's compensation procedures inadequate. See Hudson v. Palmer, 468 U.S. 517, 535 (1984) ("that [a party] might not be able to recover under [state] remedies the full amount which he might receive in a § 1983 action is not . . . determinative of the adequacy of the state remedies").  As a result, plaintiff's attempt to

---

[4](...continued)
*part of its property outside the flood plain.  Pl's Ex. 21.  Assuming this is accurate, it is conceivable that the regulation placing all of plaintiff's property in Zone A will either be amended or a variance granted by the flood board to the plaintiff in accordance with the engineer's report.*

avoid the exhaustion requirement on this basis is without merit.

Finally, plaintiff argues that its procedural due process claim is ripe for review notwithstanding any lack of ripeness as to its other claims. The Tenth Circuit has observed that certain procedural due process claims are exempt from the ripeness requirements of Williamson. See, e.g., Landmark, 874 F.2d at 723 ("There are many intangible rights that merit the protection of procedural due process although their infringement falls short of an exercise of the power of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendments."). However, "[w]hen a plaintiff alleges that [it] was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based," it must "utilize the remedies applicable to the takings claim" in order to satisfy the ripeness requirement. Rocky Mountain Materials & Asphalt, Inc. v. Bd. of County Comm'rs of El Paso County, 972 F.2d 309, 311 (10th Cir. 1992). In this case, the property interest supporting plaintiff's procedural due process claim is the right to develop its property by placing mobile homes on the land. This is the same deprivation plaintiff alleges as a basis for its takings claim. As a result, the two losses are "coextensive" and plaintiff's procedural due process claim is also not ripe for review. Id.

Individual Defendants

With respect to the individual county defendants, plaintiff has not alleged separate

constitutional violations against such defendants. Instead, its allegations of a taking and a deprivation of substantive and procedural due process apply collectively to all county defendants and involve the same facts. As the court has concluded that these claims are unripe for review, the claims against Carson and Stevenson in their individual capacities are also unripe. See, e.g., Hallco Envtl. Inc. v. Comanche County Bd. of County Comm'rs, 149 F.3d 1190, 1998 WL 339460, at *7 (10th Cir. June 10, 1998) (noting that the underlying constitutional claims were unripe for review and "any § 1983 claims based on [those] claims were also unripe for review").[5] See, also, Anderson v. Alpine City, 804 F.Supp. 269, 277 (D. Utah 1992) ("[B]ecause Plaintiffs have not set forth allegations unique to the individual defendants, and because the constitutional claims ... are unripe, the court cannot conclude that Plaintiffs have alleged separate ripe claims against the individual defendants.").

State Law Claims

The court's jurisdiction in this matter hinges on the federal claims raised by the plaintiff. 28 U.S.C. § 1331. There is no diversity jurisdiction as all parties are citizens of Oklahoma. See Pl's Am. Compl. at pp. 1-2. Because the court has concluded that all of plaintiff's federal claims are unripe for review and must be dismissed for lack of jurisdiction, plaintiff's state law claims should also be dismissed without prejudice. See Hallco, 1998 WL 339460, at *8 ("'Where federal claims have dropped out of the picture,' it is the seminal teaching to dismiss the state law claims without prejudice.") (quoting Roe v. Cheyenne

---

[5] *Hallco is an unpublished opinion cited for persuasive value only pursuant to 10th Cir. R. 36.3(B).*

Mountain Conference Resort, Inc., 124 F.3d 1221, 1237 (10th Cir. 1997)). Although late in litigation process, the court concludes dismissal is appropriate because plaintiff's state law claims are peculiarly intertwined with its federal takings and due process claims. As such, it would be very difficult to address plaintiff's state law claims standing alone. Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims. See, e.g., Roe, 124 F.3d at 1237 ("The Supreme Court has instructed . . . that federal courts should consider the propriety of exercising supplemental jurisdiction 'in each case, and at every stage of the litigation.'") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). See, also, Rau v. City of Garden Plain, 76 F.Supp.2d 1173, 1174-75 and 1178 (D. Kan. 1999) (finding constitutional taking and related due process claims unripe for review on a motion for summary judgment and remanding state law claims).

Conclusion

In accordance with the findings set forth above, plaintiff's claims arising under the Fifth and Fourteenth Amendments are unripe for review and are **DISMISSED** without prejudice for lack of jurisdiction. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims and those claims are also **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

Dated this 1st day of May, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE